# EXHIBIT "A"

2. Mar. 2017 14:49 N° 9394 P. 1



République et canton de Genève
**POUVOIR JUDICIAIRE**
Tribunal civil
Tribunal de première instance
Juge du séquestre

Séquestre N° C/4402/17

Parvenu le 02 MAR. 2017

## ORDONNANCE DE SEQUESTRE
à l'office des poursuites de Genève

Le créancier répond, en vertu de l'art. 273 al. 1 LP, de tout dommage causé par ce séquestre s'il venait à être établi en justice qu'il n'y avait pas de cas de séquestre en l'espèce ou que la créance n'était pas valable.

A cet effet, le créancier

est, en l'état, dispensé de fournir des sûretés

**Débiteur**

Monsieur Kamuran CORTUK
Ulus Mah
Kelaynak Sokak
Panorama Sitesi 7
Block n° 17/6-2, 34340 Besiktas,
Istanbul, Turquie

**Créancier**

BANCA TURCO ROMANA SA EN LIQUIDATION, Bulevardul Voluntari Nr. 88 Voluntari, Roumanie, agissant par son liquidateur FONDUL DE GARANTARE A DEPOZITELOR BANCARE, Strada Negru Voda 3, Corp A3, Etajul 2, Sector 3, Bucarest, Roumanie

**Titre et date de la créance / cause de l'obligation :**

Arrêt n°1083/R de la Cour d'appel de Bucarest, IIème section pénale, rendu le 25 mai 2012 dans la cause n° 86/299/2003 (2367/2011), déclaré exécutoire en Suisse par ordonnance OTPI/572/15 du 24 septembre 2015 du Tribunal de première instance

**Mandataire du créancier**

Me Yves KLEIN
Monfrini Crettol & Associés
3, place du Molard
1204 Genève

**Cas de séquestre :**

Article 271 al. 1 ch. 6 LP

**Créance :**

CHF 165'567'356.39

**avec intérêts à %**
1.75% sur CHF 71'482'058.79

**du**
1er janvier 2017

Genève, le 1er mars 2017

Le juge du séquestre

Les objets à séquestrer sont décrits au verso de l'ordonnance.

2 4 AVR. 2017

## Objets à séquestrer

a. en mains de WPS SA - Wealth Planning Services, 5, rue de l'Université, 1205 Genève, de toutes espèces, valeurs, titres ou créances appartenant de fait ou de droit à Kamuran CORTUK ou sous autre désignation conventionnelle ou numérique, ou sur lesquels il dispose d'une procuration de fait ou de droit, soit notamment :

i. toutes créances dont Kamuran CORTUK est directement ~~ou indirectement~~ titulaire à l'égard de WPS SA, notamment créance en restitution des droits relatifs à ROWENA VENTURE LTD, TENEO HOLDINGS LTD, FLOHR WORLDWIDE INVESTMENTS LTD et TEMPUS FOUNDATION.

ii. toutes autres créances liées à l'activité statutaire de WPS SA dont Kamuran CORTUK est directement ~~ou indirectement~~ titulaire.

b. en mains de Me Thierry BOUNOUS, dont le domicile professionnel est sis 22, rue Général Dufour, 1204 Genève, et le domicile privé 1, avenue du Cardinal-Mermillod, 1227 Carouge, tous avoirs, titres ou créances appartenant de fait ou de droit à Kamuran CORTUK ou sous autre désignation conventionnelle ou numérique, ou sur lesquels il dispose d'une procuration de fait ou de droit, soit notamment :

i. action de TENEO HOLDINGS LTD détenue par Me Thierry BOUNOUS

ii. toutes créances dont Kamuran CORTUK est directement ~~ou indirectement~~ titulaire à l'égard de Me Thierry BOUNOUS, notamment créance en restitution des droits liés à l'action de TENEO HOLDINGS LTD détenue par Me Thierry BOUNOUS.

iii. toutes autres créances liées à l'activité professionnelle de Me Thierry BOUNOUS dont Kamuran CORTUK est directement ~~ou indirectement~~ titulaire.

### Frais et dépens

Vu les art. 104 al. 1, 106 al. 2 et 111 CPC et 80 RTFMC, condamne Kamuran CORTUK

aux frais judiciaires, arrêtés à Fr. 2'000.-

et aux dépens, arrêtés à Fr. 20'000.-

Le juge du séquestre : [signature]

**Indication des voies de recours :**
La décision sur les frais ne peut être attaquée séparément que par un recours par-devant la Cour de justice, Place du Bourg-de-Four 1, case postale 3108, 1211 Genève 3, dans les 10 jours qui suivent sa notification (art. 110 et 319 ss CPC).
La suspension des délais prévue par l'art. 145 CPC ne s'applique pas.

### Etat des frais

| | Date | Autorisation et expédition d'une ordonnance de séquestre, y compris l'envoi au fonctionnaire chargé de l'exécution (art. 48 OELP et 95 ss CPC) | Emoluments et débours |
|---|---|---|---|
| | Mois 03 | | Fr. 2000.- |
| | Jour 02 | | |
| | | Expédition de séquestre | |
| | | Copie pour le créancier | |
| | | Copie pour le débiteur | |

DÉPOSÉ AU GREFFE LE
- 2 MAR. 2017
TRIBUNAL DE PREMIÈRE INSTANCE GENÈVE

2 4 AVR. 2017

### Observations

**1. Effets du séquestre**
Il est interdit au débiteur, sous menace des peines prévues par la loi (art. 169 CP), de disposer des biens séquestrés sans la permission du préposé (art. 275 et 96 LP).
L'office des poursuites peut prendre les objets sous sa garde ou les placer sous celle d'un tiers.
Il peut cependant les laisser à la libre disposition du débiteur, à charge pour celui-ci de fournir des sûretés par un dépôt, un cautionnement solidaire ou une autre sûreté équivalente (art. 277 LP).

**2. Voies de droit**
a) Opposition (art. 278 LP)
Celui dont les droits sont touchés par un séquestre peut former opposition auprès du juge du séquestre dans les dix jours dès celui où il en a eu connaissance. Le juge entend les parties et statue sans retard. La décision sur opposition peut faire l'objet d'un recours au sens du code de procédure civile (CPC). Les parties peuvent alléguer des faits nouveaux.
L'opposition et le recours n'empêchent pas le séquestre de produire ses effets.

b) Plainte (art. 17 ss LP)
Les objets insaisissables (art. 92 LP) ne pouvant pas non plus être séquestrés, les art. 91 à 109 LP relatifs à la saisie s'appliquent par analogie à l'exécution du séquestre. Tous les revenus du travail, les usufruits et leurs produits, les rentes viagères, de même que les contributions d'entretien, les pensions et prestations de toutes sortes qui sont destinés à couvrir une perte de gain ou une prétention découlant du droit d'entretien, en particulier les rentes et les indemnités en capital qui ne sont pas insaisissables en vertu de l'art. 92 LP, peuvent être séquestrés, déduction faite de ce que le préposé estime indispensable au débiteur et à sa famille.

**3. Validation du séquestre (art. 279 LP)**
Le créancier qui a fait opérer un séquestre sans poursuite ou action préalable doit requérir la poursuite ou intenter action dans les dix jours à compter de la réception du procès-verbal.

Si le débiteur forme opposition, le créancier doit requérir la mainlevée de celle-ci ou intenter action en reconnaissance de la dette dans les dix jours à compter de la notification de la décision. Si la requête de mainlevée est rejetée, le créancier doit intenter action dans les dix jours à compter de la notification de cette décision.
Si le débiteur n'a pas formé opposition ou si celle-ci a été écartée, le créancier doit requérir la continuation de la poursuite dans les vingt jours à compter de la date à laquelle le commandement de payer lui a été notifié. Si l'opposition a été écartée, le délai commence à courir à l'entrée en force de la décision écartant l'opposition. La poursuite est continuée par voie de saisie ou de faillite, suivant la qualité du débiteur.
Si le créancier a intenté l'action en reconnaissance de dette sans poursuite préalable, il doit requérir la poursuite dans les dix jours à compter de la notification du jugement.
Les délais prévus par le présent article ne courent pas :
1. pendant la procédure d'opposition ni pendant la procédure de recours contre la décision sur opposition ;
2. pendant la procédure de constatation de la force exécutoire relevant de la Convention du 30 octobre 2007 concernant la compétence judiciaire, la reconnaissance et l'exécution des décisions en matière civile et commerciale ni pendant la procédure de recours contre la constatation de la force exécutoire.

**4. Caducité du séquestre (art. 280 LP)**
Les effets du séquestre cessent lorsque le créancier :
1. laisse écouler les délais qui lui sont assignés à l'article 279 ;
2. retire ou laisse périmer son action ou sa poursuite ;
3. voit son action définitivement rejetée.

**5. Participation provisoire à des saisies (art. 281 LP)**
Lorsque les objets séquestrés viennent à être saisis par un autre créancier avant que le séquestrant ne soit dans les délais pour opérer la saisie, ce dernier participe de plein droit à la saisie à titre provisoire.
Les frais du séquestre sont prélevés sur le produit de la réalisation.
Le séquestre ne crée pas d'autres droits de préférence.

Receiver # c/4402/17



Republic and canton of Geneva
JUDICIAL POWER
**Civil Court**
Lower Court
Receiver Judge

Received

March 2, 2017

## RECEIVING ORDER
To the local authority of Geneva for Prosecution

| | |
|---|---|
| The creditor states that pursuant to art. 273 al. 1 LP, that if the seizure of assets was to be ordered in court, it would be baseless and of no value.<br><br>For this reason the creditor feel that he is exempt from providing any collateral | **Debtor**<br><br>Mr. Kamuran CORTUK<br>Ulus Mah<br>Kelaynak Sokak<br>Panorama Sitesl 7<br>Block # 17/6-2, 34340 Beslktas,<br>Istanbul, Turkey |

**The date/reason for the debt obligation;**

| | |
|---|---|
| Order #1083/R from the appellate Court of Bucarest, Penal section #II, issued May 25, 2012 for case # 86/299/2003 (2367/2011), declared enforceable in Switzerland by order OTPl/572/15 dated September 24, 2015 from the District Court | **Creditor**<br><br>BANCA TURCO ROMANIA SA IN BANKRUPCY, Bulevardul Voluntari # 88 Voluntarim Romania, acting herein by its liquidator FONDUL DE GARANTARE A DEPOZITELOR BANCARE, Strada Negru Voda 3, Corp A3, Etajul 2, Sector 3, Burarest Romania |

**Reference for Seizure of assets;**

Article 271 al, 1 ch. 6 LP

~~Agent of the creditor~~

Mr. Yves KLEIN
Monfrini Crettol & Associes
3, place du Molard
1204 Geneva

**Amount of the debt:**

CHF 165567356.00

**With interest at %**    from

1.75% on              January 1, 2017
7182058.79 CHF

Geneva March 2, 2017                 The Receiver Judge

The objects to be sequestered are described on the back of the order.       April 24, 2017

## Objects to be sequestered

a. In the possession of WPS SA- Wealth Planning Services, 5, rue de l'Universite, 1205 Geneva, all currencies, values, titles or receivables belonging de facto or by law to Kamuran CORTUK or under any other conventional or numerical identity, or any other asset for which he holds power of attorney such as:

i. All receivables due directly or indirectly to Kamuran CORTUK through WPS SA, especially all receivables pertaining to ROWENA VENTURE LTD, TENEO HOLDINGS LTO, FLOHR WORLDWIDE INVESTMENTS I TD and TEMPUS FOUNDATION.

ii. All other receivables tied to the statutory activity of WPS SA which is held <u>directly or indirectly</u> by CORTUK.

b. In the possession of Thierry BOUNOUS, whose office is located 22, rue General Dufour, 1204 Geneva, and whose private residence is located 1, avenue du Cardinal-Merrnlllod, 1227 Carouge, all assets, titles or receivables, belonging de facto or by law to Kamuran CORTUK or under any other conventional or numerical identity, or any other asset for which he holds power of attorney such as:

i. Shares of TENEO HOLDINGS I.. TD held by Mr. Thierry BOUNOUS

ii. All receivables due directly or indirectly to Kamuran CORTUK through Mr. Thierry BOUNOUS, especially all receivables pertaining to TENEO HOLDINGS LTD held by Mr. Thierry BOUNOUS.

iii. All other receivables tied to the professional activity of Mr. Thierry BOUNOUS for which Kamuran Kortuk is <u>directly or indirectly</u> the intended recipient.

| FEES AND EXPENSES | | STATUS OF THE FEES | | | |
|---|---|---|---|---|---|
| Pursuant to art. 104 al 1, 105 al 2 And 111 CPC and 89 RTFMC Orders Kamuran KORTUK To pay legal fees for And expenses for<br><br>The Judge<br><br>*[signature]*<br><br>Appeal: The order to pay for legal fees can only be disputed separately by a appeal filed with the Court, place du Bourg-de-four 1, PO box 3108, 1211 Geneva 3, within 10 days after receiving the order (art 110 and 319 of ss CPC) The suspension of the delays mentioned in art 145 CPC does not apply. | FR 2000.00<br>FR 2000.00 | Month 03 | Date Day 02 | Authorization and mailing of a receiving order, including the mailing to a process server pursuant to (art, 48 OELP et 95 CPC)<br><br>Mailing for the order To the debtor To the creditor | Emoluments and Disbursements<br>FR 2000.00<br><br>555.80 |
| Observations:<br>1. Sequestration<br>Pursuant to art 169 CP, the debtor is prohibited from disposing of the assets meant to be sequestered without the permission of the officer of the Court. The office of recovery can take possession of the asset and place them in the custody of a third party.<br>It can also leave the asset in the possession of the creditor, as collateral, guarantee or any other equivalent security<br>2. Legal recourse<br>a) Opposition art 278 LP<br>The party whose assets are ordered to be sequestered may oppose the order within 10 days after being made aware of the order. The judge hears the parties and issues an order right away. The decision on the opposition can be appealed in civil court (CPC). The partied then can file a new appeal, the opposition and the appeal thereof does not stop the order of sequestration.<br>b) Complaint (art 17 LP)<br>The assets which cannot be sequestered are (pursuant to art 92 LP) and 91 to 100 LP are: all salaries, usufruct and their products, pensions and annuities, contributions to the maintenance or benefit intended to cover any loss or any claim thereof, The pensions and indemnities which according to art 92 LP are considered seizable assets are eligible for sequestration, once the amount necessary for the maintenance of the debtor and his family is deducted.<br>3. Validation of the sequestration<br>The creditor who has requested the sequestration without filed a procedure with the court must do so within 10 days following reception of the affidavit.<br>If the debtor opposes the decision, the creditor must request the release thereof or file a procedure for the acknowledgement of debt within ten days of receiving the order to pay, If the release is rejected, the creditor must start a formal procedure within ten days of receiving the notification of this decision. If the debtor has not opposed it or if the action has been halted, the creditor must request the | | continuation of the procedure within twenty days following the reception of his copy the order to pay. The procedure is continued either by seizure or bankruptcy, depending on the situation of the debtor<br>Id the creditor has requested the seizure of the asset without having filed as formal procedure he must do so within ten days following the notification of the judgment.<br>This article does not cover:<br>1. The time during the procedure of opposition or the appeal thereof<br>2. during the procedure of enforceability pursuant to the convention of October 30, 2007, pertaining to the judicial competence, the admissibility and the execution of the decision of the civil or commercial court, or during the procedure of appeal against the declaration of enforceability.<br><br>4. Nullification of the sequestration (art 260 LP)<br>The effects of the sequestration end when the creditor:<br>1 Is late in filing as explained in art 27e<br>2 Withdraws or allows his procedure to lapse<br>3. See his procedure be permanently rejected<br><br>5. Participation to the seizures (art 261 LP)<br>If the assets are seized by another creditor prior to the time of enforceability of the seizure, the creditor has full right to participate in the seizure on a temporary basis. The fees stemming from the seizure are deducted from the product thereof.<br>The seizure does not create a precedent.<br><br>April 24, 2017 | | | |