NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | **On Appeal From:** |
| | Case No.: 17-34019 (CMG) |
| KAMURAN CORTUK, | Chapter 7 |
| | Hon. Christine M. Gravelle, U.S.B.J. |
| Debtor. | |
| | |
| KAMURAN CORTUK, | |
| SERKAN CORTUK, and | |
| YESÌM SAKARYA, | Civil Action Nos.   18-2626 (BRM) |
| | 18-2766 (BRM) |
| Appellants, | Hon. Brian R. Martinotti, U.S.D.J. |
| v. | |
| BANCO TURCO ROMANA, | |
| Appellee. | |

**MARTINOTTI, DISTRICT JUDGE**

Chapter 7 Debtor Kamuran Cortuk ("Kamuran"), Kamuran's son Serkan Cortuk ("Serkan"), and Kamuran's daughter Yesìm Sakarya ("Yesìm") (collectively, "Appellants")[1] jointly filed two notices of appeal (ECF No. 1[2] and Dkt. No. 18-2766, ECF No. 1) concerning two Bankruptcy Court orders: one dated February 14, 2018 (ECF No. 1-1), denying Appellants' motion to enforce the automatic stay, and a second dated February 20, 2018 (Dkt. No. 18-2766, ECF No. 1-1), granting partial relief from the automatic stay.  Having reviewed the parties' submissions in connection with the motion and having heard oral argument on March 6, 2019

---

[1] The Court refers to Appellants by their first names to distinguish between parties with identical last names.  The Court intends no disrespect.

[2]   ECF numbers correspond to Civil No. 18-2626, except where otherwise noted.

pursuant to Federal Rule of Civil Procedure 78(a), for the reasons set forth below, and for good cause shown, both Bankruptcy Court orders are **AFFIRMED.**

**I.     FACTS AND PROCEDURAL HISTORY**

A recent decision of the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court set forth the worldwide litigation history between the two parties. *See Banca Turco Română S.A. v. Cortuk* [2018] EWHC (Comm) 662 (Eng. & Wales) ("*U.K. Decision*"), *reproduced at* ECF No. 11-1. This Court does not rely on the foreign court's findings of fact, but its discussion may assist readers to place this decision in context.

Kamuran is a native of Turkey and current lawful permanent resident of the United States, residing in Monroe Township, New Jersey. *U.K. Decision* ¶¶ 2, 5. From 1993 to 2002, Banco Turco Romana (the "Bank") was a large commercial and retail bank operating primarily in Romania but also in Turkey and elsewhere. *Id.* ¶ 2. During that time, Kamuran owned and controlled the Bayindir Group, which majority-owned the Bank. *Id.* ¶¶ 3. In the late 1990s, Kamuran allegedly caused the Bank to fraudulently pledge its deposits as security for loans made to the Bayindir Group. *Id.* ¶ 5. When the Bayindir Group defaulted on those loans, the security holders moved against the Bank's deposits. *Id.* ¶ 5.

The Bank entered liquidation, with Marina Cornelia Saita as the representative of the Bank's corporate liquidator. Romanian authorities criminally prosecuted Kamuran, and Romanian courts sentenced Kamuran to 13 years imprisonment (later reduced to 10.5 years) and issued a civil judgment against Kamuran in favor of the Bank for $59.4 million and €11.3 million, plus interest. *Id.* ¶ 5. Kamuran took no part in either the Romanian criminal or civil proceedings. *Id.* ¶ 5.

Switzerland authorities also began an investigation of Kamuran for violating Swiss anti-money laundering laws. *Id.* ¶ 24. In support of those proceedings, the Attorney General of Geneva froze certain assets of Kamuran and related entities. *Id.* ¶ 24. Kamuran reached an agreement with Swiss authorities to give up any claim to the frozen assets in exchange for an end to the Swiss criminal proceedings. *Id.* ¶ 24. The agreement expressly disclaimed any acceptance by Kamuran of criminal or civil liability for the allegations against him or of the validity of the Romanian judgment. *Id.* ¶ 24.

In an effort to discover and seize Kamuran's assets to satisfy the Romanian judgment, the Bank instituted proceedings in the United Kingdom and (notwithstanding the cessation of the Swiss criminal actions) Switzerland against Kamuran and multiple other defendants. *Id.* ¶ 25. Although both the United Kingdom and Switzerland have domesticated the Romanian judgment, the United States has not. *Id.* ¶ 6, 25. The Bank's actions in the United Kingdom and Switzerland seek to discover and freeze assets that ostensibly belong to Kamuran, with the eventual goal of seizing those assets to satisfy the judgment. *Id.* ¶¶ 22-25.

Yesìm, a Turkish citizen residing in Turkey, previously worked in the human resources department of one of the companies within the Bayindir Group. *Id.* ¶ 3. Additionally, Yesìm is Kamuran's undisputed creditor, having loaned Kamuran the money for his legal fees. (Appellants' Reply Br. (ECF No. 28) at 16; Appellee's Resp. Br. (Dkt. No. 18-2766, ECF No. 5), at 13-14.) The Bank filed a fraudulent transfer action in this district against Kamuran, Yesìm, and an affiliated United Kingdom company, Westport Industries, Ltd., with the goal of unwinding a transfer of New Jersey property to Yesìm from the company. *See* Compl. ¶ 1, *Saita v. Cortuk*, Civ. No. 17-6949 (D.N.J. filed Sept. 11, 2017), *removed to Bankruptcy Court*, Adv. Proc. No. 17-1766 (Bankr. No. 17-34019) (Bankr. D.N.J filed Dec. 11, 2017). The Bank alleged

that the transfer was part of a scheme to disperse Kamuran's assets to others, preventing the Bank from obtaining those assets to satisfy the Romanian judgment. *See id.*

Serkan resides with Kamuran in New Jersey. (ECF No. 16, at 1, 39.) Kamuran transferred funds to Serkan within the one-year period preceding Kamuran's bankruptcy petition. (Dkt. No. 18-2766, ECF No. 5, at 13.)

Kamuran filed for bankruptcy protection in the United States Bankruptcy Court for the District of New Jersey. *In re Cortuk*, No. 17-34019 (Bankr. D.N.J. filed Nov. 29, 2017). The Bankruptcy Court consolidated the fraudulent transfer action against Yesìm into Kamuran's bankruptcy proceeding as an adversary proceeding. *Saita v. Cortuk,* Adv. Proc. No. 17-1766 (Bankr. No. 17-34019) (Bankr. D.N.J filed Dec. 11, 2017).

As part of Kamuran's bankruptcy proceeding, the Bank and the Chapter 7 Trustee ("Trustee") moved for entry of a "consent order"—a settlement to which both the Bank and the Trustee consented, but to which Kamuran, Yesìm, and Serkan objected. The order would partially lift the automatic stay, permitting the Bank to litigate judgment enforcement proceedings in the United Kingdom and Switzerland on the Trustee's behalf and under the Trustee's direction, and further require the Bank to turn over all proceeds from these British and Swiss proceedings to the Trustee for inclusion in Kamuran's bankruptcy estate. The Bankruptcy Court granted this motion and denied Kamuran's cross-motion to enforce the automatic stay.

## II.    JURISDICTION

The Court has jurisdiction over this appeal because the Bankruptcy Court's order partially lifting the automatic stay is a "final order" over which this Court has mandatory appellate jurisdiction. *See* 11 U.S.C. § 158(a)(1); *Moxley v. Comer (In re Comer)*, 716 F.2d 168, 172 (3d Cir. 1983).

**III. STANDING**

As an initial matter, the Bank argues that the Court need not address the merits of this case, because none of the three appellants has standing to appeal. The Court disagrees: Kamuran has standing to appeal an order granting relief from the automatic stay, because Kamuran is aggrieved by the order removing his protection under the automatic stay.[3]

"Appellate bankruptcy standing, unlike Article III standing, must be based strictly on financial injury." *In re Revstone Indus.*, 690 F. App'x 88, 89 (3d Cir. 2017). "Appellate standing in bankruptcy is limited to 'persons aggrieved' by an order of the bankruptcy court." *Id.* (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004)). "[T]he 'persons aggrieved' test now exists as a prudential standing requirement that limits bankruptcy appeals to persons 'whose rights or interests are directly and adversely affected pecuniarily by an order or decree of the bankruptcy court.'" *Combustion Eng'g*, 391 F.3d at 214 (quoting *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993)). A person is "aggrieved only if the bankruptcy court's order 'diminishes their property, increases their burdens, or impairs their rights.'" *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000) (quoting *Dykes*, 10 F.3d at 187).

Kamuran has standing to appeal because he is aggrieved by the Bankruptcy Court's order granting relief from the automatic stay: the order both increases Kamuran's burdens and impairs his rights. First, the order increases Kamuran's burdens because he must now defend judgment execution proceedings in Switzerland and the United Kingdom—proceedings which the automatic stay barred. Second, the order impairs his rights, because Kamuran previously had the full protection of the automatic stay—a provision Congress enacted in part to protect bankruptcy petitioners like Kamuran, whereas now he does not. *See In re Schaefer Salt Recovery, Inc.*, 542

---

[3] The Court need not address Yesìm's or Serkan's appellate standing, because even if both lacked appellate standing, the Court must still address the merits of this case in light of Kamuran's appellate standing.

F.3d 90, 100 (3d Cir. 2008) ("The purpose of the automatic stay is 'to afford the debtor a breathing spell by halting the collection process. It enables the debtor to attempt a repayment or reorganization plan with an aim toward satisfying existing debt.'" (quoting *In re Siciliano*, 13 F.3d 748, 750 (3d Cir.1994))).

The Bank argues that because Kamuran's bankruptcy estate will have no assets remaining after the Trustee exhausts the estate to compensate creditors, Kamuran has no interest in his bankruptcy estate, and therefore cannot be aggrieved. In other words, the Bank argues that lifting the automatic stay will not "diminish [Kamuran's] property," because after payment of claims, there will be no estate property remaining for Kamuran that could be diminished. *PWS Holding Corp.*, 228 F.3d at 249. This argument is misplaced, because there are two additional means by which a Bankruptcy Court's order may "aggrieve" parties: "increas[ing] their burdens, or impair[ing] their rights." *Id.* Because lifting the automatic stay subjects Kamuran to other legal proceedings, Kamuran faces both increased burdens and impaired rights. The order aggrieves Kamuran, who therefore has standing to appeal.

## IV. MERITS

Because Kamuran has standing to appeal the Bankruptcy Court's order, the Court turns to the merits of the Bankruptcy Court's approving the settlement order granting relief from stay, and affirms.

This Court reviews a bankruptcy court's order modifying the automatic stay for abuse of discretion. *See In re Myers*, 491 F.3d 120, 128 (3d Cir. 2007). When reviewing a motion for relief from the automatic stay, a Bankruptcy Court should consider multiple factors, including:

> whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the

> necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

This Court likewise reviews compromises between a creditor and the Trustee for abuse of discretion. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). When reviewing a proposed settlement, the Bankruptcy Court considers four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*

After analyzing all four *Martin* factors and all twelve *Sonnax* factors, the Bankruptcy Court approved the limited stay relief proposed by the Trustee and by the Bank. (ECF No. 17-3, at 43-57.) Reviewing the Bankruptcy Court's opinion, this Court is unable to say that the Bankruptcy Court abused its discretion.

Appellants make three arguments, each to the effect that the Bankruptcy Court committed an error of law, subject to *de novo* review, and warranting reversal. None of Appellants' arguments are persuasive.

First, Appellants argue that the Bankruptcy Court erred by allowing the Bank, rather than the Trustee, to pursue judgment execution proceedings overseas because there is no colorable claim for the Bank to pursue overseas. This argument is misplaced.

Assuming without deciding that Bankruptcy Code § 544 prohibits parties other than the Trustee from pursuing certain recovery actions, the Bankruptcy Court may grant so-called "derivative standing" to creditors to pursue claims, rather than requiring the trustee to do so. *See Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 579-80 (3d Cir. 2003). A Bankruptcy Court may not grant not derivative standing unless, among other things, the creditors have a colorable claim to recovery. *See Infinity Investors Ltd. v. Kingsborough (In re Yes! Ent. Corp.)*, 316 B.R. 141, 145 (D. Del. 2004). In other Bankruptcy contexts, "colorable" is synonymous with "good faith," such that a claim is colorable if the claim is reasonably "in dispute." *In re St. Clair*, 251 B.R. 660, 667 (D.N.J. 2000). In other words, a claim need not necessarily be successful in order to be colorable.

The Bankruptcy Court did not abuse its discretion by finding that the Bank's claims for recovery in the overseas judgment execution proceedings met the low burden of being "colorable." The allegations in this case involve a complex web of fictitious entities with varying ownership structures, all spread across the globe. Whether or not the Bank's claims would necessarily succeed is not at issue. Given the complexity of the asset recovery issues at stake in this litigation, the Bankruptcy Court did not abuse its discretion by finding the Bank's claims to be colorable.

Second, Appellants argue that the Bankruptcy Court's decision to partially lift the automatic stay violates Kamuran's right to litigate all actions in the Bankruptcy Court for the District of New Jersey.[4] The Court rejects this argument because Kamuran has no such absolute right to consolidate all actions into a single court. While consolidation may

---

4 To the extent that Appellants argue that the Bankruptcy Court's decision deprives Kamuran of due process, the Court finds this claim to be insufficiently briefed. *See T.C. ex rel. C.C. v. A.I. Dupont Hosp. for Children*, 368 F. App'x 285, 287 (3d Cir. 2010).

be appropriate, the Bankruptcy Court may also exercise its discretion to lift the automatic stay to permit outside litigation to proceed. *See, e.g.*, *In re Wilson*, 116 F.3d 87, 89-91 (3d Cir. 1997) (holding that the bankruptcy court should have lifted the automatic stay to allow a litigant to pursue a state court appeal against the debtor). As this Court previously explained, the Bankruptcy Court did not abuse its discretion in this case by lifting the automatic stay, thereby permitting outside litigation to proceed.

Third, Appellants argue that the Bankruptcy Court incorrectly assumed that it lacked jurisdiction over foreign litigation targets, and that this erroneous assumption lead the Bankruptcy Court to permit proceedings in overseas courts that would clearly have jurisdiction over these foreign litigation targets. The Court rejects this argument because the error, if any, was harmless. *Cf. In re Wolf*, 739 F. App'x 165, 167 (3d Cir. 2018) (holding that a bankruptcy court's decision constituted harmless error where the decision could be upheld on other grounds).

None of the remaining *Sonnax* factors the Bankruptcy Court analyzed weighed against granting relief from the automatic stay. (ECF No. 17-3, at 45-50.) Assuming without deciding that the Bankruptcy Court would have had jurisdiction over all the foreign litigation targets, the Bankruptcy Court nonetheless could have exercised its discretion to partially lift the automatic stay based on the remaining factors.

As the Appellants concede, the Bankruptcy Court's assumption about its authority over the foreign litigation targets applies only to the fourth, sixth, and tenth *Sonnax* factors. In weighing the remaining factors,[5] the Bankruptcy Court found that the overseas proceedings (1) would help to identify and localize Kamuran's assets, (2) would

---

5 For convenience, the Court numbers these factors the same as the Bankruptcy Court's order below. The Court does not list the eighth factor because the Bankruptcy Court found it was not relevant here.

enhance the domestic bankruptcy proceeding by potentially recovering additional assets for the estate, (3) stemmed from Kamuran's prior fiduciary role at the Bank, (5) involved foreign law with which foreign courts would be more familiar, (7) would not prejudice other creditors because any recovery would return to the estate for the benefit of all creditors, (9) would not result in a judicial lien avoidable by Kamuran, (11) are already underway, and (12) that the balance of the harms weighs in favor of partially lifting the stay because in this case, the stay primarily operated to protect individuals and companies other than Kamuran, rather than Kamuran himself. (ECF No. 17-3, at 45-50.) Because the Bankruptcy Court could have reasonably concluded that these factors alone warranted a partial lifting of the automatic stay, any error by the Bankruptcy Court was harmless.

V. **CONCLUSION**

For the reasons set forth above, both Bankruptcy Court orders are **AFFIRMED**. An appropriate Order will follow.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

**Dated: May 20, 2019**